UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 18-CR-00099-RBJ

FL. BAR NO. 32834

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.

**LACHY ESPINEL,**

    Defendant.
_____/

## MOTION TO MODIFY DEFENDANT LACHY ESPINEL'S SENTENCE

COMES NOW, defendant Lachy Espinel by and through undersigned counsel and moves to modify Mr. Espinel's sentence and convert his incarceration to home confinement and states;

1. On November 22, 2019 Lachy Espinel was sentenced to twenty (20) months of incarceration followed by supervised release. The case involved the cultivation of marijuana and money laundering of the proceeds obtained therefrom.

2. Mr. Espinel's surrender date was extended due to ongoing treatment for Sleep Apnea, Asthma and a Blood Disorder. He ultimately surrendered to the Bureau of Prisons on January 12, 2020 to the Prison Camp in Miami, Florida.

3. At the time of his surrender to the facility, Mr. Espinal brought and furnished medical equipment to the medical staff for his sleep apnea. This condition poses a potentially fatal risk if not properly treated. Nevertheless, Mr. Espinel has never

been provided his equipment despite numerous requests including a letter from his medical doctor.

4. The COVID-19 pandemic is placing Mr. Espinel at great risk. His Counselor, with whom Mr. Espinel had contact as recently as Tuesday has tested positive for the Virus. There are ninety-eight (98) other inmates who sleep in the same room. They share soap, computers, telephones and other common devices. There are no masks, no sanitation, no gloves or other protections. Mr. Espinel has attempted to see the Doctor, but he was sent away and told he needed an Appointment.

5. If Mr. Espinel is permitted to serve the balance of his sentence or at least the next six months of his sentence on home confinement instead of in the prison he will be able to obtain the care he needs and avoid great risk of contracting the virus. He plans to self-quarantine immediately due to his contacts within the facility.

6. Mr. Espinel asserts his rights under the Eighth Amendment to the Constitution of the United States as his present incarceration constitutes "cruel and unusual punishment".

7. Mr. Espinel further asserts the "All Writs Act" 28 USC 1651 to confer power upon this Court to grant Mr. Espinel this relief. This Act requires, the absence of alternative remedies, the writ must be necessary or appropriate to the particular case, the statute requires courts to issue writs "agreeable to the usages and principles of law" and the act authorizes writs in aid of jurisdiction.

8. Undersigned counsel has conferred with Assistant United States Attorney Zachary Phillips who objects to this request. Undersigned Counsel also attaches a

Memorandum written by the United States Attorney General authorizing the Bureau of Prisons to utilize Home Confinement for inmates such as Mr. Espinel.

9.  Undersigned Counsel submits this request is not being made to use the pandemic crisis as a tool to avoid incarceration. To the contrary, this Court has been made aware of the authenticity of Mr. Espinel's medical conditions and upon information and belief his incarceration under existing conditions poses a real risk to his health and his life!

WHEREFORE, Lachy Espinel respectfully requests this Court permit him to be released on home confinement in lieu of incarceration for the balance of his sentence or for at least the next six (6) months until the crisis subsides.

Respectfully submitted,

JEFFREY E. FEILER, P.A.
Attorney for Defendant
1000 Speer Boulevard, #1307
Denver, Colorado 80204
ana@jeffreyfeiler.com
Tel:   (305) 670-7700
Fax:   (305) 669-8198

By: s/Jeffrey E. Feiler
    JEFFREY E. FEILER

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 27, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

s/Jeffrey E. Feiler
JEFFREY E. FEILER



**Office of the Attorney General**
**Washington, D. C. 20530**

March 26, 2020

MEMORANDUM FOR DIRECTOR OF BUREAU PRISONS

FROM:               THE ATTORNEY GENERAL   /s/ William P. Barr

SUBJECT:         <u>Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic</u>

Thank you for your tremendous service to our nation during the present crisis. The current situation is challenging for us all, but I have great confidence in the ability of the Bureau of Prisons (BOP) to perform its critical mission during these difficult times. We have some of the best-run prisons in the world and I am confident in our ability to keep inmates in our prisons as safe as possible from the pandemic currently sweeping across the globe. At the same time, there are some at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities. I am issuing this Memorandum to ensure that we utilize home confinement, where appropriate, to protect the health and safety of BOP personnel and the people in our custody.

### I. **TRANSFER OF INMATES TO HOME CONFINEMENT WHERE APPROPRIATE TO DECREASE THE RISKS TO THEIR HEALTH**

One of BOP's tools to manage the prison population and keep inmates safe is the ability to grant certain eligible prisoners home confinement in certain circumstances. I am hereby directing you to prioritize the use of your various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic. Many inmates will be safer in BOP facilities where the population is controlled and there is ready access to doctors and medical care. But for some eligible inmates, home confinement might be more effective in protecting their health.

In assessing which inmates should be granted home confinement pursuant to this Memorandum, you are to consider the totality of circumstances for each individual inmate, the statutory requirements for home confinement, and the following non-exhaustive list of discretionary factors:

- The age and vulnerability of the inmate to COVID-19, in accordance with the Centers for Disease Control and Prevention (CDC) guidelines;

Memorandum from the Attorney General                                                Page 2
Subject: Department of Justice COVID-19 Hoarding and Price Gouging Task Force

- The security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum security facilities;

- The inmate's conduct in prison, with inmates who have engaged in violent or gang-related activity in prison or who have incurred a BOP violation within the last year not receiving priority treatment under this Memorandum;

- The inmate's score under PATTERN, with inmates who have anything above a minimum score not receiving priority treatment under this Memorandum;

- Whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety, including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face in his or her BOP facility;

- The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community. Some offenses, such as sex offenses, will render an inmate ineligible for home detention. Other serious offenses should weigh more heavily against consideration for home detention.

In addition to considering these factors, before granting any inmate discretionary release, the BOP Medical Director, or someone he designates, will, based on CDC guidance, make an assessment of the inmate's risk factors for severe COVID-19 illness, risks of COVID-19 at the inmate's prison facility, as well as the risks of COVID-19 at the location in which the inmate seeks home confinement. We should not grant home confinement to inmates when doing so is likely to increase their risk of contracting COVID-19. You should grant home confinement only when BOP has determined—based on the totality of the circumstances for each individual inmate—that transfer to home confinement is likely not to increase the inmate's risk of contracting COVID-19.

## II.    PROTECTING THE PUBLIC

While we have an obligation to protect BOP personnel and the people in BOP custody, we also have an obligation to protect the public. That means we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19, or put the public at risk in other ways. I am therefore directing you to place any inmate to whom you grant home confinement in a mandatory 14-day quarantine period before that inmate is discharged from a BOP facility to home confinement. Inmates transferred to home confinement under this prioritized process should also be subject to location monitoring services and, where a court order is entered, be subject to supervised release.

We must do the best we can to minimize the risk of COVID-19 to those in our custody, while also minimizing the risk to the public. I thank you for your service to the country and assistance in implementing this Memorandum.